**Case No. 23-3265**

---

---

## IN THE UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

### UNITED STATES OF AMERICA,

**Plaintiff-Appellee**

v.

### WILLIAMS HITCHINGS,

**Defendant-Appellant**

---

**On appeal from the United States District Court
for the Southern District of Ohio (Dayton)**

---

**Brief for the Appellant**

---

**Joseph A. Almeida**
**Attorney for Appellant**
**118 McDowell Ave.**
**Steubenville, OH 43952**
**Tel.: 740.282.1806**
**Fax: 740.282.1293**
**jalmeida118@sbcglobal.net**

# TABLE OF CONTENTS

Table of Authorities ........................................................................ iii

Oral Argument ............................................................................... v

Statement of Jurisdiction ................................................................ 1

Statement of Issues ........................................................................ 1

Statement of Case ........................................................................... 2

Summary of Argument .................................................................... 8

Argument ........................................................................................ 8

I. Standard of Review. ..................................................................... 8

II. Despite the District Court's holding, the beginning of the interrogation was not custodial, but circumstances escalated into custodial interrogation when Defendant was handcuffed after an emotional breakdown, at which point the *Miranda* warnings should have been renewed, and not being renewed, all Defendant's statements from that point on should be suppressed................................................................................... 9

A. The beginning of the interview was not custodial because the Defendant was free to leave. . ...................................................................... 10

B. Because the interview escalated into custodial status when the Defendant was handcuffed after his emotional breakdown and remained handcuffed for virtually the remainder of the interview and because the Defendant had no intelligent understanding of the nature of the interrogation as a whole either prior to or after the escalation, officers Kinzig/Kunkleman should have re-*Mirandized* the Defendant at the point of escalation. .................................. 12

III. If the district court was correct and the entire interview was custodial, Defendant did not knowingly and intelligently waive his *Miranda* rights

because he was laboring in a distraught mental state and confused about the consequences of his actions in relation to his *Miranda* rights....................  17

IV. Whether Defendant otherwise waived his *Miranda* rights or not, he unequivocally invoked the right to counsel during the interrogation and did not re-initiate the interrogation process, and, therefore, all questioning should have ceased upon the invocation....................................................... 22

A. The scope of law on invocation of counsel and Edwards initiation.  ...... 22

B. The critical interrogation exchange between police interrogators and Defendant................................................................................................... 26

C. Defendant unequivocally invoked the right to counsel............................ 29

D. Police response after the Defendant's Edward invocation were attempts to elicit a post-request waiver of the right to counsel, and, further, the Defendant did not reinitiate the interrogation; therefore, all police interrogation of the Defendant should have ceased from this point on in the interrogation. ............................................................................................... 30

V. In the totality of the circumstances, incriminating statements made by the Defendant in the interrogation, at least from the time of Defendant's emotional breakdown, were not voluntary.  ................................................. 34

Conclusion ................................................................................... 36

Certificate of Compliance.............................................................. 37

Certificate of Service .................................................................... 37

Addendum: Designation of Relevant District Court Documents pursuant to 6 Cir. Rule 30.................................................................................... 38

# TABLE OF AUTHORITIES

**Federal Statutes**

18 USC § 922(g)(3) ..................................................................................2, 3
18 USC § 2252 (a)(4)(B) and (b)(2) ............................................................ 2
18 USC § 2252(a)(2) .................................................................................... 2
18 USC § 3742(a) ......................................................................................... 1
28 U.S.C. § 1291 .......................................................................................... 1

**Cases**

**United States Supreme Court**

*Arizona v. Fulminante*, 499 U.S. 279 (6th Cir. 1987)................................35
*Colorado v. Connelly*, 479 U.S. 157(1986)............................................ 31, 34
*Colorado v. Spring*, 479 U.S. 564 (1987) ...............................................18
*Culombe v. Connecticut*, 367 U.S. 568 (1961) .......................................... 38
*Davis v. United States*, 512 U.S. 452 (1994) ..................................... 22, 23
*Edwards v. Arizona*, 451 U.S. 477 (1981).......... 13, 17, 21–25, 30–31, 33–35
*Howes v. Fields*, 565 U.S. 499 (2012)........................................................ 11
*Johnson v. Zerbst,* 304 U.S. 458 (1938) ..................................................... 14
*Michigan v. Mosley*, 423 U.S. 96 (1975)................................................... 22
*Miranda v. Arizona*, 384 U.S. 436, 477 (1966) ......................................10
*Moran v. Burbine*, 475 U.S. 412 (1986) ...................................................17
*Oregon v. Mathiason* 429 U.S. 492, 495 (1977) ...................................... 10
*Rhode Island v. Innis*, 446 U.S. 291(1980) ............................................. 23
*Smith v. Illinois*, 469 U.S. 91 1984)....................................................... 24, 30
*Stansbury v. California*, 511 U.S. 318 (1994).............................................. 17
*Williams v. Taylor* 529 U.S. 362 (2000)...................................................... 33
*Wyrick v. Fields,* 459 U.S. 42 (1982) .......................................................... 13

**United States Courts of Appeal**

**Sixth Circuit**

*Bush v. Warden, Southern Ohio Corr. Facility*, 573 F. App'x 503 (6th Cir. 2014)....................................................................................................... 33, 34
*Garner v. Mitchell*, 557 F.3d 257 (6th Cir. 2009) ................................. 17, 18

*Kyger v. Carlton* 146 F.3d 374 (6th Cir. 1998) .............................................. 23
Holland *v. Rivard*, 800 F.3d 224 (6th Cir. 2015) ........................................... 23
*McKinney v. Hoffner*, 830 F.3d 363 (6th Cir. 2016) ................................. 23, 25
*Rogers v. Westbrooks*, No 3;13-cv-141 (M.D. Tenn. 2019) ....................... 13
*Treesh v. Bagley*, 612 F.3d 424 (6th Cir. 2010)..................................... 12, 13
*VanHook v. Anderson*, 488 F.3d 411(6th Cir. 2007) ............................... 25, 26
*Weissert v. Palmer*, No. 15-2292 (6th Cir. 2017) ........................................ 22
*United States v. Delaney*, No. 09-1820 (6th Cir. 2011).................................. 23
*United States v. Dickerson*, No. 21-6176 (6th Cir. 2022) ........................... 16
*United States v. Ellis*, 479 F.3d 606, 611 (6th Cir. 2007).............................. 9
*United States v. Fisher*, 745 F.3d 200, 202 (6th Cir. 2014) ........................... 9
*United States v. Galloway*, 316 F.3d 624(6th Cir. 2003) ..............................10
*United States v. Hinojosa*, 606 F.3d 875 (6th Cir. 2010) ............................. 11
*United States v. Jones*, 147 F. Supp. 2d 752 (E.D. Mich. 2001) .................. 13
*United States v. Lewis*, 556 F.2d 446 (6th Cir. 1977)................................... 11
*United States v. Long*, 464 F.3d 569 (6th Cir. 2006)...................................... 9
*United States v. Lopez-Medina*, 461 F.3d 724 (6th Cir. 2006)........................ 9
*United States v. Luck*, 852 F.3d 615 (6th Cir. 2017) ................................... 16
*United States v. Morris*, No. 2:13-cr-86 (S.D. Ohio 2013) ......................... 13
*United States v. Panak*, 552 F.3d 462 (6th Cir. 2001)...............................11
*United States v. Navarro-Camacho*, 186 F.3d 701(6th Cir. 1999).................. 9
*United States v. Salvo*, 133 F.3d 843, 948 (6th Cir.1998) ....................... 10, 17
*United States v. Swanson*, 341 F.3d 524 (6th Cir. 2003) ............................. 11
*United States v. Whaley*, 13 F.3d 963 (6th Cir. 1994) .................................. 25

## Other Circuits

*United States v. Joseph*, 730 F.3d 336 (3d Cir. 2013) ........................................ 9
*Wood v. Ercole*, 644 F.3d 83 (2d Cir. 2011) ................................................ 25

## United States District Courts

*United States v. Mills* No. 5:22-cr-530 (N.D. Ohio 2023) ............................ 13
*United States v. Musaibli*, 575 F. Supp.3d 870 (E.D. Mich. 2021) ..............18
*United States v. Smith*, No. 3:21-cr-732 (N.D. Ohio 2022) ................. 18, 22
*United States v. Reagan* No.3:07-cr-98 (E.D. Tenn. 2007)......................... 11
*United States v. Ward*, No. 5:15-36-KKC  (E.D. Ky. 2015) ....................... 22

## ORAL ARGUMENT

The record of the case and the briefs submitted provide adequate information to determine the issues presented herein; accordingly, oral argument is not requested.

## STATEMENT OF JURISDICTION

At the Change-of-Plea hearing on July 11, 2022, Defendant pleaded guilty to Count 3 of the Superseding Indictment filed on July 7, 2021. Count 3 charged the Defendant with receipt of child pornography in violation of 18 USC § 2252(a)(2). At the Sentencing Hearing on March 8, 2023, the district court accepted the Defendant's plea and sentenced the Defendant to 120 months' imprisonment. Judgement was entered on the March 9, 2023. Defendant filed a notice of appeal on March 10, 2023. Accordingly, the Sixth Circuit Court of Appeals has appellate jurisdiction over this case pursuant to 28 U.S.C. § 1291, which authorizes review of final decisions of the United States' district courts, and 18 USC § 3742(a), which authorizes review of final sentences.

## STATEMENT OF ISSUES

There are four issues.

If the beginning of an interrogation is not custodial because the Defendant is free to leave, but *Miranda* warnings are given as a matter of caution, and if then the interrogation turns custodial because the Defendant is no longer free to leave, being restrained after a violent self-harming outburst, should *Miranda* warnings be given again at the point of escalation,

and if not given, should Defendant's statements made after the escalation be suppressed?

If the interrogation was custodial, did the defendant knowingly and intelligently waive his *Miranda* rights when he was in a distraught mental state and confused about the consequences of waiving *Miranda* rights?

If the Defendant unequivocally invoked his right to counsel during the interrogation and did not reinitiate questioning, should Defendant's statements from the time of the invocation be suppressed?

In the totality of the circumstances, including Defendant's mental state, were the Defendant's responses to interrogation involuntary?

## STATEMENT OF CASE

Defendant was charged by an Indictment filed on May 25, 2021 for possession of child pornography in violation of 18 USC § 2252(a)(4)(B) and (b)(2) and for possession of a firearm (which had been shipped in interstate commerce) while being a user of controlled substances in violation of 18 USC § 922(g)(3). Indictment, RE 21, PageID # 75. This was followed by a Superseding Indictment filed on July 27, 2021, charging the Defendant in Count 1 for possession of child pornography in violation of 18 USC § 2252(a)(4)(B) and (b)(2), in Count 2 for possession of a firearm (which had been shipped in interstate commerce) while being a user of controlled

substances in violation of 18 USC § 922(g)(3), in Counts 3 and 4 for
receiving visual depictions of minors engaged in sexually explicit conduct in
violation of 18 USC § 2252(a)(2), and in Count 5 for transporting by a
facility of interstate commerce depictions of minors engaged in sexually
explicit conduct in violation of 18 USC § 2252(a)(1) and (b). Superseding
Indictment, RE 27, PageID ## 120-22. On September 17, 2021, the
Defendant filed a Motion to Suppress Statements which the district court
denied in an Entry and Order filed on March 14, 2022. Motion to Suppress,
RE 31, PageID ## 130 ff; Entry and Order, RE 37, PageID ## 265 ff. At the
Change-of-Plea hearing on July 11, 2022, Defendant pursuant to a written
Plea Agreement pleaded guilty to Count 3 of the Superseding Indictment.
Change of Plea, RE 70, PageID # 683.

The Plea Agreement was entered pursuant to Federal Rule of Criminal
Procedure 11(c)(1)(C) binding the district court, if the agreement was
accepted, as to a sentencing disposition of imprisonment for a period not
greater than 136 months. Plea Agreement, RE 45, PageID ## 293, 295. The
district court clarified that this sentencing disposition must be read in light of
the statutory minimum penalty so that if the court accepted the Plea
Agreement, its obligation would be to impose a sentence between 60 (the
minimum) and 136 months. Plea Hearing, RE 70, PageID # 670. The Plea

Agreement contained a waiver of the right to appeal the conviction and the sentence, directly and collaterally; however, pursuant to Rule 11(a)(2) the Defendant explicitly reserved the right to appeal the district court's denial of the Defendants Motion to Suppress. *Id.*, PageID # 299.

At the Sentencing Hearing, in part in deference to the 60-136 range set forth in the Plea Agreement and in part on factors under 18 USC § 3553(a), the district court imposed a sentence of 120 months. Sentencing Hearing, RE 69, PageID # 635.

The facts pertinent to the Defendant's Motion to Suppress Statements are as follows. Through the investigation of another individual, the Defendant was brought to the attention of the Federal Bureau of Investigation ("FBI"). PSR, RE 49, PageID # 374, Entry and Order, RE 37, PageID # 265. Continued investigation tied the Defendant to child pornography, firearms, and illicit narcotics, and law enforcement officials obtained a search warrant for and executed a search of the Defendant's residence. PSR, RE  49, PageID ## 375–76. Subsequent to the search, Officer Kunkleman of the Troy, Ohio Police Department and FBI Special Agent Kinzig led the Defendant, in handcuffs, to an interview room at the Troy Police Department. Entry and Order, RE 37, PageID # 266.

The whole interview of the Defendant lasted nearly six hours. At the beginning of the interview Kinzig read the Defendant his *Miranda* rights and told the Defendant that he could stop answering questions at any time; the Defendant signed a form confirming that he understood the rights but was not waiving them. *Id*. PageID # 266; Summary of Interview, RE 34-2, PageID #208. During the first hour of the interview, the Defendant answered some questions but refused to answer others, including questions about passwords to computer accounts. *Id*.  About an hour into the interview the following exchange occurred:

> Defendant: Lawyer. I have to have a lawyer from this point on. Don't I?
> Kinzing: It's up to you.
> Defendant: I want to help you, but it doesn't matter. I'm already dead anyway, so it doesn't fucking matter. I'm not answering questions anymore until you find me an attorney. Please find me an attorney.
> Kinzig: Okay.
> Defendant: That's what I'm supposed to do, right?
> Kinzig: It's your choice.
> Kunkleman: It's up to you …
> Defendant: Tell me honestly, like what do you think I …
> Kunkleman: Look I'm going to tell you honestly, okay. You want my opinion?
> Defendant: I do.
> Kunkleman: I think it's always better to cooperate. I think it goes better in the court system …
>
> *Id*. PageID ## 266–67.

Immediately after this exchange (again, about an hour into the interview) the Defendant had a kind of emotional break down: he began punching himself in the head and shouting at the officers that they should shoot him. *Id*. PageID # 267; Summary of Interview, RE 34-2, PageID # 215. Kunkleman and Kinzig then handcuffed him again, and the Defendant remained handcuffed during nearly the remainder of the interview. *Id*. PageID ## 267, 271; Summary of Interview, RE 34-2, PageID # 232.

At this point, Kinzig was about to leave the room. Kinzig testified at the Suppression hearing that he was going to terminate the interview because the Defendant had asked for counsel, but Kinzig did not communicate this to the Defendant. Summary of Interview, RE 32-2, PageID # 215; Entry and Order, RE 37, PageID # 267. As Kinzing was leaving the following exchange occurred:

> Defendant: Wait, wait, wait, wait, wait.
> …
>
> Defendant: (to Kinzig) Please sit down, I, I'll tell you whatever you want to know.
> Kinzig: Well you asked for a lawyer, so
> Defendant: Fuck the lawyer. What does it matter? I mean, if a lawyer comes, I'm still going to jail. So what does it matter anymore? It means, if I 'm able to help you?
> Kunkleman: It's real simple, do you want to talk or not?
> Defendant: I shouldn't but I'm going to. Because I just don't care about the outcome of this. It doesn't matter to me. I'd rather be helpful. I just want to be helpful.

Kinzig: Well again, you asked for a lawyer. So if you want a lawyer, we're gonna stop.
Defendant: No, no, no, no. It doesn't matter, it doesn't matter. I don't want my parents to fucking have to foot the bill for one or know about this.
Kinzig: We can get you a lawyer. We can appoint a lawyer for you if you want.
Defendant: I don't, I don't need a lawyer. I don't need a lawyer.
Kunkleman: Do you want a lawyer yes or not?
Defendant: I want one but I don't need one, it doesn't matter to me.
Kunkleman: That's not helping out situation.
Defendant: I want to help you with whatever you need. I don't need one. Whatever you want. I'm fine.

Summary of Interview, RE 34-2, PageID ## 215–15.

Near the end of the interview, the Defendant asked: "Do I need an attorney, or are we still doing okay?" He was told that it was up to him whether he wanted an attorney. Summary of Interview, RE 34-2, PageID # 234. At the end of the interview the Defendant "was transported … to the United States Marshal's Service pursuant to a probable cause arrest." Summary of Interview, RE 34-2, PageID # 234.

On this record the district court held 1) that during the entire interview the Defendant was subject to custodial interrogation; Entry and Order, RE 34, PageID ## 239 ff; 2) that the Defendant waived his *Miranda* rights; *Id*. PageID ## 243 ff; 3) that the Defendant's request for counsel was unequivocal, but he reinitiated the interview and waived his rights; *Id*. PageID ## 275 ff;  and 4) that his admissions during the interview were not

the result of improper influence but were free and voluntary; *Id*. PageID ## 277 ff.

## SUMMARY OF ARGUMENT

Although the beginning of the interrogation was not custodial and although police gave *Miranda* warnings to the Defendant, the interrogation escalated into a custodial interrogation. At that point, *Miranda* warnings should have been given to the Defendant again, and the warnings not being given, all statements after the point of escalation should be suppressed.

Defendant did not knowingly and intelligently waive his *Miranda* rights because he was laboring in a distraught mental state and confused about the consequences of his actions in relation to his *Miranda* rights.

Defendant unequivocally invoked his right to counsel and did not reinitiate interrogation so that from the time of invocation all of Defendant's statements should be suppressed.

Defendant's participation in the interrogation was involuntary so that all of Defendant's statements should be suppressed.

## ARGUMENT

I. Standard of Review

"'The grant or denial of a motion to suppress is a mixed question of fact and law. On appeal, we review the district court's findings of fact for

clear error and its conclusions of law de novo.'" *United States v. Fisher*, 745 F.3d 200, 202 (6th Cir. 2014) (quoting *United States v. Ellis*, 479 F.3d 606, 611 (6th Cir. 2007)). A factual finding is clearly erroneous when a court "is left with the definite and firm conviction that a mistake has been committed." *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999). When the motion is denied, the evidence is reviewed in a light most favorable to the government. *United States v. Long*, 464 F.3d 569, 572 (6th Cir. 2006).

II. Despite the District Court's holding, the beginning of the interrogation was not custodial, but circumstances escalated into custodial interrogation when Defendant was handcuffed after an emotional breakdown, at which point the *Miranda* warnings should have been renewed, and not being renewed, all Defendant's statements from that point on should be suppressed. [1]

---

[1] This argument has been properly preserved for determination on direct appeal. First, the district court acknowledged that failure to give *Miranda* rights after the Defendant's request for counsel was part of the Defendant's argument. Entry and Order, RE 37, PageID # 275. Second, arguments for suppression of evidence made for the first time on appeal are waived. *United States v. Lopez-Medina*, 461 F.3d 724, 739 (6th Cir. 2006). But "to preserve an argument and avoid waiver, the argument presented in the Court of Appeals must depend on both the same legal rule and the same facts as the argument presented in the District Court." *United States v. Joseph*, 730 F.3d 336, 342 (3d Cir. 2013). The Defendant argued in its motion to suppress that the interrogation of the Defendant was custodial and that the requirement to give *Miranda* warnings was necessary. Defendant's Memorandum Supporting Motion to Suppress, RE 34, PageID # 194. The Government argued in its response to the Defendant's motion that the interrogation was not custodial and that there was no requirement for *Miranda* warnings. Government's Response to Defendant's Memorandum, RE 35, PageID ## 242–243.

A. The beginning of the interview was not custodial because the Defendant was free to leave.

This relevance of determining where the interrogation turned custodial is that this turning also marks the point at which *Miranda* warnings should have been given (again) to the Defendant. *Miranda v. Arizona*, 384 U.S. 436, 477 (1966); *United States v. Galloway*, 316 F.3d 624, 628–29 (6th Cir. 2003). Whether an interrogation is custodial depends upon 1) the location of the interview and "the fact that [the defendant] was questioned in a … police station does not necessarily constitute custodial interrogation." *Oregon v. Mathiason* 429 U.S. 492, 495 (1977)); *United States v. Salvo*, 133 F.3d 843, 948 (6th Cir.), *cert. Denied*, 523 U.S. 1122 (1998); 2) the length and manner of the questioning; 3) whether there was any restraint on the individual's freedom of movement; and 4) whether the individual was told

---

Both the Defendant's and the Government's arguments depended on the same set of facts, namely, the details of the interrogation of the Defendant. Both the Defendant's and the Government's arguments depended on the same legal rules, namely, the rules for determining the custodial nature of interrogations and the rules requiring delivery of *Miranda* warnings. The argument presented here also depends on the details of the interrogation of the Defendant and on whether and where an interrogation becomes custodial so that *Miranda* would apply. Therefore, the argument here is fairly regarded as the same as the above-described arguments presented to the district court for the purpose of preserving the question for appeal.

he did not need to answer questions. *United States v. Hinojosa*, 606 F.3d 875, 883 (6th Cir. 2010). Of all the factors, being free to leave or free to refuse to answer questions is the most important consideration in the *Miranda* custody analysis. *Howes v. Fields*, 565 U.S. 499, 515 (2012); *United States v. Swanson*, 341 F.3d 524, 500 (6th Cir. 2003). Such insurances, e.g. being free to leave, "likely would … guarantee[] the noncustodial nature" of the interview. *United States v. Panak*, 552 F.3d 462, 468 (6th Cir. 2001). Further, the giving of *Miranda* warnings as a matter of caution in a non-custodial interview does not in and of itself transform the interview into custodial interrogation. *United States v. Lewis*, 556 F.2d 446, 449 (6th Cir. 1977); *United States v. Reagan* No.3:07-cr-98 at 3 (E.D. Tenn. 2007) (reading *Miranda* warnings does not convert a non-custodial interview into a custodial interview) (citing *Lewis*, supra).

At about 6:30 a.m., the Defendant was brought from the scene of a police search at his residence handcuffed in a police cruiser to an interview room at the Troy policy station. The handcuffs were removed, the Defendant sat in a chair facing the the door of the interview room, which was not locked, and he was told that he was not in custody, that he did not have to answer questions, that he was not under arrest and, more than once, that he was free to leave. Suppression Hearing, RE 33, PageID ## 147, 176, 177,

181, 183. Summary of Interview, RE 34-2, PageID # 207–208. According to

FBI Agent Kinzig, if the Defendant at this point had gotten up to leave, he

would have been free to do so; further Kinzig stated that he gave the

Defendant *Miranda* warnings, not because the Defendant was in custody but

only out of an abundance of caution. Suppression Hearing, RE 33, PageID

## 184–85. At this point, most essentially because the Defendant was

completely free to leave, the interview situation was non-custodial.

However, at around 7:30, circumstances changed.

B. Because the interview escalated into custodial status when the
Defendant was handcuffed after his emotional breakdown and remained
handcuffed for virtually the remainder of the interview and because the
Defendant had no intelligent understanding of the nature of the interrogation
as a whole either prior to or after the escalation, officers Kinzig/Kunkleman
should have re-*Mirandized* the Defendant at the point of escalation.

Kinzig gave the Defendant *Miranda* warnings at the beginning of the

interrogation, although she did not have to because the interrogation was at

that point not custodial. When the interrogation escalated into custodial

status after the Defendant was handcuffed, Defendant should have been

*Mirandized* a second time.

The determination whether *Miranda* warnings should be renewed

during an interview depends on the totality of the circumstances. *Treesh v.

Bagley*, 612 F.3d 424, 431 (6th Cir. 2010). "Once a defendant has been

properly advised of his constitutional rights 'additional warnings are only

required if the circumstances seriously change between the initial warning and the interrogation'" being challenged. *United States v. Mills*, No. 5:22-cr-530 at (N.D. Ohio 2023) (quoting *Treesh v. Bagley* 612 F.3d 424, 432 (6th Cir. 2010); *citing Wyrick v. Fields,* 459 U.S. 42, 47 (1982)). "Factors to be considered in the totality of the circumstances are "(1) whether the defendant knew and subjectively understood his rights at the time the *Miranda* warnings were given by interrogators (2) whether the defendant had a sophisticated or past experience with law enforcement; and (3) whether anything happened in the time between the defendant's receiving the first warning and the challenged statements that 'rendered Defendant unable to fully consider the effects of an exercise or waiver of his rights before speaking with police. *United States v. Morris*, No. 2:13-cr-86 at 5 (S.D. Ohio 2013) (quoting *United States v. Jones*, 147 F. Supp. 2d 752, 761 (E.D. Mich. 2001) (reciting the three factors) and *Rogers v. Westbrooks*, No 3;13-cv-141 at 111 (M.D. Tenn. 2019) (adding the qualification of subjectivity to factor no. 1). These questions aid the essential determination whether circumstances have changed such that the defendant's answers to interrogation are no longer voluntary or that the defendant is no longer making a knowing and intelligent waiver of his rights. *Westerbooks* No. 3:13-cv-141 at 111 (citing *Wyrick v. Fields*, 459 U.S. 42, 47–49 (1982)).

Regarding factor no.1, the Defendant had no intelligent or knowing sense of the nature of the interrogation or his rights in relation to the interrogation. Although speaking specifically about the waiver of *Miranda* rights, *Edwards v. Arizona*, 451 U.S. 477 (1981), instructs in relation to the *Miranda* process as a whole that intelligence and knowledge are distinct from volition in a defendant's disposition to his rights under *Miranda*:

> It is reasonably clear under our cases that waivers of counsel must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case 'upon the particular facts and circumstances surrounding that case, including background, experience, and conduct of the accused." *Arizona*, 541 U.S. at 482–83 (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938)).

The Defendant's actions during the beginning of the interrogation (the part prior to his emotional outburst) in relation to his *Miranda* rights may have been in some general sense voluntary but could not be called knowing and intelligent. From the moment the Defendant was transported to the Troy policy office while the search of his residence was being conducted and continuing throughout the first portion of the interview, he appeared in distress making on several occasions comments that he should kill himself. Interview Summary, RE 34–2, PageID ## 206–207, 211. Despondency of this sort was not conducive to an intelligent and knowing assessment by the Defendant of the nature and extent of his legal rights. The Defendant stated

that he was not waiving his rights but nonetheless signed the waiver form presented to him. *Id*., PageID # 208. This indicates confusion not intelligence. Most significantly, the Defendant subjectively believed that he was relying on Kinzig/Kunkelman to inform him when the interview reached a point where he should stop answering and invoke the right to counsel: "How far do I incriminate myself telling you things that are personal (i.e., not pertaining to the child pornography that was the subject of the search being conducted at the Defendant's residence)? You know, like, before I actually do need one of those attorneys. I, I need to understand it." *Id*. PageID # 212. Again, the subjective belief that the interrogating officers would assist the Defendant in signaling when an interview turns from innocuous to critical so that the Defendant can then invoke his right to counsel depicts no intelligent understanding of the nature of *Miranda* rights during interrogation.

Regarding factor no. 2, Defendant had no prior history nor any remotely sophisticated experience with law enforcement processes as indicated by a Criminal History Category of I. PSR, RE 49, PageID # 405.

Regarding factor no. 3, namely, a change in circumstances, the Defendant was not handcuffed and was free to leave the interrogation before his breakdown. After his breakdown, he was handcuffed, no longer free to

leave, Sentencing Hearing, RE 33, PageID # 185, and the attitude of the
interrogation turned more hostile than it was: Kunkleman in response to the
Defendant's emotional breakdown: "If you want to act like a dick, we'll treat
you like one." Entry and Order, RE 37, PageID # 271. This change was
substantial and serious because the interview progressed from non-custodial
to custodial and exacerbated the distraught and confused state that the
Defendant was already experienceing. "In deciding whether a person is 'in
custody' for *Miranda* purposes, we consider all of the 'objective
circumstances … to determine how a reasonable person in the position of the
individual being questioned would gauge the breadth of his or her freedom
of action.'" *United States v. Dickerson*, No. 21-6176 at 3 (6th Cir. 2022)
(quoting *United States v. Luck*, 852 F.3d 615, 621 (6th Cir. 2017). No
reasonable person would believe that he was free to leave an interrogation
being conducted while he was in handcuffs. Further, the Defendant himself
perceived that circumstances had changed because very shortly after his
breakdown and after he was placed in handcuffs he stated adamantly: "I'm
not answering anymore until you find me an attorney." Summary of
Interview, RE 34-2, PageID # 214.

All these factors indicate that, whatever the Defendant's disposition
to the interview was prior to his emotional breakdown, it was now no longer

knowing and intelligent. In such a serious change of circumstances,

Kinzig/Kunklemann were at this point required to give a second set of

*Miranda* warnings. Since no such warnings were given, all admissions after

this point should be suppressed. *United States v. Salvo*, 133 F.3d 943, 948

(6th Cir 1998) (incriminating statements admitted in custody without

defendant being advised of *Miranda* rights cannot be admitted at trial)

(citing *Stansbury v. California*, 511 U.S. 318, 322 (1994).

III. If the district court was correct and the entire interview was
custodial, Defendant did not knowingly and intelligently waive his *Miranda*
rights because he was laboring in a distraught mental state and confused
about the consequences of his actions in relation to his *Miranda* rights.

Beginning with *Edwards v. Arizona*, 451 U.S. at 482–83, quoted

above, the inquiry concerning waiver of *Miranda* rights looks to whether the

waiver was knowing and intelligent separately and additionally from

whether the waiver was voluntary. In other words: "The *Miranda* waiver

inquiry [has] dimensions: voluntariness and comprehension, both to be

examined from the totality of the circumstances. *Garner v. Mitchell*, 557

F.3d 257, 263 (6th Cir. 2009) (citing *Moran v. Burbine*, 475 U.S. 412

(1986)). In determining comprehension, the Defendant's actions are viewed

"'primarily from the perspective of the police'" so that if police interrogators

had reason to believe that the Defendant's mental state impeded an

understanding of his rights or if the defendant exhibited confusion about

such rights, it would be necessary to find that any waiver, even if somehow voluntary, was nevertheless not knowingly or intelligently made. *United States v. Smith*, No. 3:21-cr-732 at 7–8 (N.D. Ohio 2022) (quoting *United States v. Musaibli*, 575 F. Supp.3d 870, 879 (E.D. Mich 2021) and citing *Garner*, 557 F.3d at 263). The central question is whether the defendant "'knew and understood the essential consequences of his waiver, namely, that he could chose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time.'" *Garner* 557 F.3d at 261 (quoting *Colorado v. Spring*, 479 U.S. 564, 574 (1987).

On the element of comprehension, diagnosed mental incapacity may be a paradigmatic factor, but want of comprehension can be found, without the finding of a specified pathology, in the totality of the circumstances enveloping the *Miranda* issue. *Garner*, 557 F.3d at 264. The Defendant's general mental state during the interrogation is fairly characterized as distraught. Further, the Defendant's understanding of his relation to child pornography is beyond what ordinary opinion would characterize as normal (even for an addict of pornography): that is, the defendant exhibited a marked abnormality which skewed his view of the consequences of his actions. Both the mental distress and the abnormal understanding of the consequences of the harm of viewing child pornography created

confusion in the Defendant's understanding of the *Miranda*-related consequences of his decisions to answer certain questions of the law-enforcement interrogators.

On the issue of mental state, the Defendant was distraught by the interrogation experience. He expressed on more than five (5) occasions during the interrogation that he felt strongly compelled to kill himself and that he wished that the police would have just kill him. Summary of Interview, RE 34–2, PageID ## 207, 211, 213, 215. He felt that his life was over simply because he liked to look at pornography (which in his distorted view was harmless), and in coordination with one of his expressions of a desire to kill himself, he experienced an emotional eruption where he was actually attempting to harm himself. Summary of Interview, RE 34-2, PageID # 215. It was at this point that the Defendant was handcuffed and remained so for most of the rest of the interview. *Id.*

On the issue of abnormality, the Defendant manifested what appeared to be a genuine belief that viewing depictions of child pornography was harmless as opposed to the creation of the depictions. The Defendant seemed genuinely unable to connect the viewing of child pornography and the creating of child pornography in relation to the harm done to the children in the pornographic depictions. Summary of Interview, RE 34-2, PageID ##

219, 220, 223, 225. In the Defendant's mind, viewing pornography in the privacy of his home was victimless, especially if one did not actually engage in the sexual conduct depicted (which the Defendant did not do). Summary of Interview, RE 34-2, PageID ## 219, 229. The Defendant also expressed despondency over a kind of victimhood which he felt for two reasons. First, he felt demonized by the general public condemnation of what he perceived was the victimless, private act of viewing child pornography in his own home. Summary of Interview, RE 34-2, PageID # 215. Second, he also felt demonized because general public perception did not recognize, something which he himself thought, namely, that the inclination to child pornography was natural, hereditary, or biological. Summary of Interview, RE 34-2, PageID # 223. In other words, he believed that answering question about viewing pornography would not be incriminating. ("Hitchings reiterated the thought that the problem with child pornography was the creation of it, not the viewing of it." He emphasized that he did not create nor act upon it with children. Summary of Interview, RE 34-2, PageID ## 220, 223.)

Defendant's metal state and abnormal understanding of the harm in viewing child pornography was evident to the observation of the interrogators. The Defendants despondency and aberration of thought about child pornography manifested in a fundamental confusion about the

consequences of his actions in answering questions. He believed that he

could answer some questions and could look to the interrogators for signals

when he was going too far in his answering and thus required the assistance

of an attorney.  "We got to get to a point eventually … because like, how far

do I incriminate myself telling you things that are personal? You know, like,

before I actually do need one of those attorneys. I, I need to understand it."

Summary of Interview, RE 34-2, PageID # 212. "Do I need an attorney, or

are we still doing ok?" *Id*., PageID # 234. "Lawyer. I have to have a lawyer

from this point on. Don't I?" *Id*., PageID # 214. These examples are not

meant here to implicate the categorical rule of *Edwards v. Arizona*, 451 U.S.

477 (1981) that interrogation must cease once a defendant invokes the right

to counsel but rather to indicate that the Defendant was confused about the

consequences of answering questions in a *Miranda* situation. That is, openly

to the observation of the law-enforcement personnel at the interrogation,

Defendant did not comprehend the scope of his right to remain silent or to

cease answering questions or the scope of any waiver of these rights and

believed he could answer questions with a kind of impunity until he elicited

from the interrogators an indication that it was time for a lawyer. "Where

law enforcement has reason to believe that a defendant interviewee

misunderstood the *Miranda* warnings or consequences of waiving the same,

the totality of the circumstances may necessitate a finding that the waiver

was not voluntarily made," certainly not knowingly and intelligently made.

*United States v. Smith*, 3:21-cr-732, at 7 (N.D. Ohio 2022). Therefore, there

was no waiver of *Miranda*.

  IV. Whether Defendant otherwise waived his *Miranda* rights or not,
he unequivocally invoked the right to counsel during the interrogation and
did not re-initiate the interrogation process, and, therefore, all questioning
should have ceased upon the invocation.

  A. The scope of law on invocation of counsel and Edwards
reinitiation.

  "When a suspect in custody requests a lawyer, interrogation must

cease until a lawyer is provided, unless the suspect [re-]initiates discussion."

*Weissert v. Palmer*, No. 15-2292 at 10 (6th Cir. 2017) (citing *Edwards v.

Arizona*, 451 U.S. 477, 484–85 (1981)). After such an invocation of the right

to counsel, interrogation must cease, and any statements elicited after the

invocation are inadmissible. *United States v. Ward*, No. 5:15-36-KKC at 7

(E.D. Ky. 2015) (quoting *Michigan v. Mosley*, 423 U.S. 96, 103–104

(1975)).  However, "'if a suspect makes a reference to an attorney that is

ambiguous or equivocal in that a reasonable officer in light of the

circumstances would have understood only that the suspect *might* be

invoking the right to counsel, our precedents do not require the cessation of

the questioning.'" *Weissert*, No. 15-2292 at 10 (quoting *Davis v. United*

*States*, 512 U.S. 452, 549 (1994) (emphasis in original). An articulation such as "maybe I should talk to a lawyer" is insufficient, *Davis*, 512 U.S. at 455, as is an articulation such as "I think I should have a lawyer. What do you think?" *United States v. Delaney*, No. 09-1820 at 12 (6th Cir. 2011). But an articulation such as "I just as soon have an attorney" is sufficient. *Kyger v. Carlton* 146 F.3d 374, 379 (6th Cir. 1998). In summary:

> Under *Edwards v. Arizona*, 451 U.S. 477 … (1981), "when an accused has [unambiguously and unequivocally] invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated *custodial* interrogation even if he has been advised of his rights [, …] unless the accused himself initiates further communication, exchanges or conversations with the police." *Id.* at 484–95 … (emphasis added) Stated simply, "once the accused requests counsel officials may not reinitiate questioning until counsel has been made available to him. *Minnick v* Missisippi, 498 U.S. 146, 147 … (1990)
>
> Holland *v. Rivard*, 800 F.3d 224, 237 (6th Cir. 2015)

Law-enforcement reinitiation of interrogation after an *Edwards* invocation of the right counsel refers "'not only to express questioning, but to any words or actions on the part of the police … that the police should know are reasonably likely to elicit an incriminating response.'" *McKinney v. Hoffner*, 830 F.3d 363, 370 (6th Cir. 2016) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980)). Such reinitiation includes badgering a defendant to throw doubt upon his initial unequivocal invocation of counsel. In *Smith*

*v. Illinois*, 469 U.S. 91, 93 (1984) the Supreme Court addressed the

following exchange between interrogated suspect and police:

> Suspect: Uh, yeah. I'd like to do that [have a lawyer present at interrogation].
>
> Police: If you want a lawyer and you're unable to pay for one a lawyer will be appointed to represent you free of cost, do you understand that?
>
> Suspect: Okay.
>
> Police: Do you wish to talk to me at this time without a lawyer being present?
>
> Suspect Yea and no, uh, I don't know what's what, really.
>
> Police: Well. You either have [to agree] to talk to me this time without a lawyer being present and if you do agree to talk with me without a lawyer being present you can stop at any time you want to.
>
> Suspect: All right. I'll talk to you then.

Regarding this exchange and regarding whether it contained the suspect's

subsequent waiver of the right to counsel initially invoked, the Supreme

Court said:

> With respect to the waiver inquiry, we accordingly have emphasized that a valid waiver "cannot be established by showing only that [the accused] responded to further police-initiated custodial interrogation." *Edwards v. Arizona*, 451 U.S., at 484. Using an accused's subsequent responses to cast doubt on the adequacy of the initial request *itself* is even more intolerable. "No authority, and no logic, permits the interrogator to proceed … on his own terms and as if the defendant had requested nothing, in the hope that the defendant might be induced to say something casting retrospective doubt on his

initial statement that he wished to speak through an attorney or not at all." 102 Ill.2d, at 376, 466 N.E.2d at 241 (Simon J., dissenting).

*Smith*, 469 U.S. at 99 (emphasis in original).

In summing up its holding the Supreme Court said: "We hold … that, under the clear logical force of settled precedent, an accused's *postrequest* [sic] responses to further interrogation may not be used to cast retrospective doubt on the clarity of the initial request itself." *Smith*, 469 U.S. at 99–100 (emphasis in original). Further, "events occurring minutes *after* an unequivocal invocation of counsel are irrelevant: all interrogation must stop until counsel is provided." *McKinney,* No. 2:13-cv-15284 at 10 (quoting *Wood v. Ercole*, 644 F.3d 83, 92 n. 8 (2d Cir. 2011)).

Regarding re-initiation of questioning by a defendant, "'[A]n *Edwards* [re-]initiation occurs when, *without influence by the authorities*, the suspect shows a willingness and desire to talk generally about his case.'" *VanHook v. Anderson*, 488 F.3d 411, 418 (6th Cir. 2007) (quoting *United States v. Whaley*, 13 F.3d 963, 967 (6th Cir. 1994) (emphasis added)). "'[W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights.'" *VanHook*, 488 F.3d at 417 (quoting *Edwards*, 451 U.S. at 484). "'If a discussion comes at the

behest of the police after the right to counsel has been invoked, it is presumed coercive.'" *VanHook*, 488 F.3d at 417 (quoting *Arizona v. Roberson*, 486 U.S. 675 685–86 (1988).

  B. The critical interrogation exchange between police interrogators and Defendant.

  The following exchange took place between the Defendant and Kunkleman/Kinzig, about an hour into the interrogation:

  1) Defendant: Lawyer. I have to have a lawyer from this point on. Don't I?

  2) Kinzig: It's up to you.

  3) Defendant: I want to help you, but it doesn't matter. I'm already dead anyway, so it doesn't fucking matter. I'm not answering questions anymore until you find me an attorney. Please find me an attorney.

  4) Kinzig: Okay.

  5) Defendant: That's what I'm supposed to do, right?

  6) Kinzig: It's your choice.

  7) Kunkleman: It's up to you, William.

  8) Defendant: Tell me honestly, like what do you think I …

  9) Kunkleman: Look I'm going to tell you honestly, okay. You want my opinion?

  10) Defendant: I do.

  11) Kunkleman: I think it's always better to cooperate. I think it goes better in the court system …

Order and Entry, RE 37, PageID # 267.

At this point the Defendant experienced his emotional outburst, punching himself in the head and attempting to harm himself and was placed in handcuffs. While Defendant was in handcuffs, Kunkleman stated (whether to Kinzig or to the Defendant is not clear from the written record): "Why sit here and say, 'yeah I got child porn' and then shut up?" Order and Entry, RE 37, PageID # 267. Around this point Kinzig exited the room intending to end the interview because of the Defendant's invocation of his right to an attorney, Suppression Hearing, Suppression Hearing, RE 33, PageID # 159; Entry and Order, RE 37, PageID # 267. Kinzig re-entered the room to get something and beckoned Kunkleman to leave with her when the following exchange occurred.

12) Defendant: Wait, wait, wait, wait, wait.

13) Kinzig: What?

14) Defendant: I just, I'm sorry, I'm sorry, I'm sorry. I just, I don't see any future after this. I don't have any hope … so I don't …

15) Kunkleman: Well William, that is what you've decided. It doesn't have to be that way.

16) Defendant: I don't see any other way through.

17) Kunkleman: Okay, well there are other ways, okay. And it's time you think about exploring some of them. Alright? Because here is what you have to remember. I understand that you're distraught. I

understand that your house got destroyed somewhat. But it's fixable. It's not like they're going to have to tear it down. Okay?

18) Defendant: Please sit down, I, I'll tell you whatever you want to know, so.

19) Kinzig: Well you asked for a lawyer.

20) Defendant: Fuck the lawyer. What does it matter? I mean, if a lawyer comes, I'm still going to jail. So what does it matter anymore? It means, if I'm able to help you?

21) Kunkleman: It's real simple, do you want to talk or not?

22) Defendant: I shouldn't but I'm going to. Because I just don't care about the outcome of this. It doesn't matter to me. I'd rather be helpful. I just want to be helpful.

23) Kinzig: Well again, you asked for a lawyer. So if you want a lawyer, we're gonna stop.

24) Defendant: No, no, no, no. It doesn't matter, it doesn't matter. I don't want my parents to fucking have to foot the bill for one or know about this.

25) Kinzig: We can get you a lawyer. We can appoint a lawyer for you if you want.

26) Defendant: I don't I don't need a lawyer. I don't need a lawyer.

27) Kunkleman: Do you want a lawyer, yes or no?

28) Defendant: I want one but I don't need one, it doesn't matter to me.

29) Kunkleman: That's not helping our situation.

30) Defendant: I want to help you with whatever you need. I don't need one. [Whatever] you want. I'm fine.

…

31) Defendant: I'm sorry.

32) Kinzig: Again, I'm not feeling very comfortable right now because you asked for a lawyer. But if you want to talk to us, we'll talk to you. But I'm not feeling real comfortable.

33) Defendant: I will talk to you, I will talk to you.

34) Kunkleman: I, I want, you know how you wanted your questions answered. Yes or no, do you want a lawyer now?

35) Defendant: I do not need a lawyer, no. I don't need a lawyer.

36) Kunkleman: Yes or no, do you want a lawyer now?

37) Defendant: No, I do not need a lawyer, no.

Summary of Interview, RE 34-2, PageID # 215–216.

C. Defendant unequivocally invoked the right to counsel.

Regarding this exchange, first, as the district court itself held, Order and Entry, RE 37, PageID # 275, the Defendant unequivocally invoked his right to counsel, when he stated: "I'm not answering questions anymore until you find me an attorney." The district court's conclusion is correct. Defendant's invocation is not ambiguous as are statements of the form "I think I should have a lawyer. What do you think?" which have been found insufficient to invoke the right to counsel. Defendant's invocation is even more categorical than statements of the form "I just as soon have an attorney," which have been found sufficiently unequivocal to render the

invocation of counsel effective. No reasonable officer could interpret Defendant's statement to mean anything other than that he refused to answer further questions without a lawyer.

D. Police response after the Defendant's Edward invocation were attempts to elicit a post-request waiver of the right to counsel, and, further, the Defendant did not reinitiate the interrogation; therefore, all police interrogation of the Defendant should have ceased from this point on in the interrogation.

On eliciting a post-request waiver, numbered paragraphs 5–11 in the above-quoted exchange between the Defendant and the police are like the exchange which the Supreme Court in *Smith v. Illinois* held was an exchange to induce the defendant therein to cast retrospective doubt on his initial invocation of the right to counsel. The essence of the exchange in *Smith* can be characterized as follows: *Defendant: I invoke my right to counsel; Police: Do you want to talk now without a layer; Defendant: I'm confused; Police: Simple, lawyer or no lawyer.* Under the holding of Smith, this exchange was an attempt by police to cast retrospective doubt in the initial *Edwards* invocation of the right to counsel, and, therefore, the Defendant's initial unequivocal invocation was effective, and all interrogation should have ceased until counsel was provided. Similarly, the essence of the exchange between the Defendant here and police in the numbered paragraphs indicated at the beginning of this paragraph can be characterized as follows:

*Defendant: I invoke my right to counsel, but I'm sort of confused about it;*

*Kunkleman/Kinzig: In our opinion, it's always better to talk without a*

*lawyer, but it's simple: lawyer or no lawyer, your choice.* The essence of the

exchange herein and that in *Smith* is identical: it represents police attempt to

throw retrospective doubt on the Defendant's initial *Edwards* invocation. On

the authority of *Smith*, therefore, the Defendant's invocation of the right to

counsel was effective, and all interrogation should have ceased until counsel

was provided.

Further, Defendant did not waive his initial invocation to the right

to counsel.

First, the police created an atmosphere of coercion which

nullified any potential waiver. The above-described police badgering

(Numbered paragraphs 5–11) intended to cast retrospective doubt on

the Defendant's *Edwards* waiver, contributed to this atmosphere of

coercion. In addition, Kunkleman's remark, "Why sit here and say, 'yeah

I got child porn' and then shut up?" was a form of interrogation after the

Defendant's *Edwards* invocation and was therefore presumptively

coercive. Police coercion is the most significant factor in determining the

voluntary nature of a *Miranda* waiver. *Colorado v. Connelly*, 479 U.S. 157,

167 (1986). Thus, the police badgering and Kunkleman's remark created an atmosphere of coercion mitigating against any Defendant waiver.

Second, the police reinitiated interrogation, not the Defendant. Numbered paragraphs 12 and 14 are not statements on the part of the Defendant showing a willingness and desire to talk generally about the case. They are rather "events occurring minutes *after* an unequivocal invocation of counsel [and] are [to be regarded as] irrelevant:" *McKinney,* No. 2:13-cv-15284 at 10. Police comment in numbered paragraph 15 ("It doesn't have to be that way.") fairly can be taken to mean that the Defendant should not stick to his *Edward's* invocation and should begin cooperating by answering police questions again. This is the beginning of police reinitiation of interrogation. Numbered paragraph 17 ("Okay, well there are other ways, okay. And it's time you think about exploring some of them.") is a continuation of police reinitiation of interrogation. The conception of 'exploring other ways' fairly suggests ways beyond relying on *Miranda* rights. Therefore, the Defendant's statements in numbered paragraph 18 ("Please sit down, I, I'll tell you whatever you want to know, so."), numbered paragraph 20 ("If I'm able to help you?"), numbered paragraph 22 ("I'd rather be helpful. I just want to be helpful."), numbered paragraphs 30 ("I want to help you."), and 33 ("I want to talk to you.") , all of these, if

taken by themselves, could be understood as indications of Defendant's desire to talk generally about his case and thus a re-initiation of questioning. However, the standard requires that the expression of this desire be "without influence of authorities," and all of the Defendant's remarks in the numbered paragraphs described were prompted by police questioning.

In finding that the Defendant reinitiated questioning, the district court erred in its reliance on *Bush v. Warden, Southern Ohio Corr. Facility*, 573 F. App'x 503 (6th Cir. 2014). First, *Bush* was a review of a case brought under the AEDPA standard of review for cases certified for appeal under 28 USC § 2254. Thus, *Bush* had only to consider whether "the Ohio Court of Appeals application of the Supreme Court precedent … was not 'objectively unreasonable.'" *Bush*, 573 F. App'x at 514 (quoting *Williams v. Taylor* 529 U.S. 362, 409 (2000)). This is a lesser standard than the de novo standard of review operative here on direct appeal. The *Bush* court acknowledged that the issue whether the defendant's waived his *Edwards* invocation by the reinitiation of questioning was a "close call" on the facts of that case, but because *Bush* was not determined on a de novo standard, it is not a strong precedent for the case herein. Second, there is an essential distinction between the reinitiation facts in *Bush* and the reinitiation facts here. In *Bush* the defendant spoke about the facts of his case. After the first invocation of

the right to counsel, the defendant said without undue influence from police interrogators: "Dude stabbed me. I don't even have no gun on me …"; after the second invocation of counsel, the defendant said: "I know I was standing right there when the bad deal was going down and the mother fucker stabbed me. … I shot him …" *Bush*, 573 F. App'x at 506. Here the Defendant in an environment where, as argued above, police interaction constituted a badgering of the Defendant regarding his *Edwards* invocation of the right to counsel and created an atmosphere of coerion, made only general comments like "I will help you," "I want to talk to you," which in relation to the defendant's statements in *Bush* are not expressions of a general desire to talk about the case but statements related to the Defendant's *Edwards* invocation caused by police badgering.

V. In the totality of the circumstances, incriminating statements made by the Defendant in the interrogation, at least from the time of Defendant's emotional breakdown, were not voluntary.

The Fifth Amendment privilege against compulsory self-incrimination bars the admission of involuntary confessions. *Colorado v. Connelly*, 479 U.S. 157, 163–64 (1986). Factors in determining whether a defendant's confession is involuntary include (1) police coercion, (2) the length of the interrogation, (3) the location of the interrogation, (4) the continuity of the interrogation, (5) the suspect's maturity, (6) the suspect's

education, (7) the suspect's physical and mental condition, and (8) whether the suspect was advised of his or her *Miranda* rights. *Withrow v. Williams*, 367 U.S. 680, 693–94 (1993). Police coercion is critical but psychological coercion will satisfy the condition. *Culombe v. Connecticut*, 367 U.S. 568, 602 (1961); *Arizona v. Fulminante*, 499 U.S. 279, 287 (6th Cir. 1987).

As contended in Argument III(D), the police created an atmosphere of psychological coercion by badgering the Defendant to elicit a post-request waiver of his *Edwards* invocation of the right to counsel which Defendant made directly before his emotional breakdown. From that point, the interrogation lasted approximately five continuous hours (i.e., the interrogation was conducted in one, very long sitting challenging anyone's endurance) in a bleak, windowless police interrogation room while the Defendant remained handcuffed. The Defendant has only a high-school-level education and no experience with the processes of criminal prosecution, none with police interrogation. This inexperience manifested itself in the multiple times the Defendant called upon the police to tell him whether the questioning had reached a point where he needed a lawyer (i.e., before his categorical *Edwards* invocation just prior to his breakdown). The Defendant's mental condition was fragile as manifested in the many times he expressed the desire to kill himself or be killed by police and most especially

in the emotional breakdown where he attempted to harm himself with punches to his head. Most significantly, as contended in Argument II, *Miranda* warnings were not renewed after Defendant's emotional breakdown when the interrogation became indisputably custodial. Any one of these points by themselves may not be enough to conclude that the Defendant was answering questions involuntarily, but all taken together support that contention.

## CONCLUSION

For the reasons argued above, the denial of Defendant's motion to suppress should be reversed and the case remanded for proceedings accordingly.

/s/ Joseph A. Almetisfida
Joseph A. Almeida
Attorney for Appellant

**CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief complies with the type-volume limitation provided in Fed. R. App. P. 32(a)(7)(B); it contains 8,343 words of Times New Roman (14 point) proportional type, prepared in Microsoft Word (version 16.16) for Macintosh OS 11.7.6.

**CERTIFICATE OF SERVICE**

I certify that on August 7, 2023,  the foregoing brief was served on all parties or their counsel of record through the CM/ECF System if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their addresses of record. I certify also that on this same date I posted by First Class United States Mail a true copy of the foregoing to: William Hitchings, Reg NO. 29443-509, FCI Elkton, Federal Correctional Institution, PO Box 10, Lisbon, OH 44432.

/s/ Joseph A. Almeida

ADDENDUM
Designation of Relevant District Court Documents
Pursuant to 6 Cir. R. 30

| Document | Record Entry No. | Date | PageID # Range |
|---|---|---|---|
| Indictment | 21 | 05/25/2021 | 75–78 |
| Superseding Indictment | 27 | 07/27/2021 | 120–124 |
| Defendant's Motion to Suppress & Supporting Memo. | 31 | 09/17/2021 | 130–136 |
| Transcript: Suppression Hearing | 33 | 12/29/2021 | 138–188 |
| Defendant's Memorandum Supporting Motion to Suppress | 34 | 01/19/2022 | 189–202 |
| Summary of Interview | 34-1 | 01/19/2022 | 203–234 |
| Gov. Response to Defendant's Memorandum Supporting Motion to Suppress | 35 | 02/08/2022 | 235–255 |
| Defendant's Reply to Government's Response | 36 | 02/18/2022 | 256–263 |
| Entry and Order (re motion to suppress) | 37 | 03/14/2022 | 265–280 |
| Plea Agreement | 45 | 07/19/2022 | 293–302 |

| Pre-sentence Investigation Report | 49 | 09/28/2022 | 367–413 |
|---|---|---|---|
| Judgment | 62 | 03/09/2023 | 568–576 |
| Notice of Appeal | 65 | 03/10/2023 | 586 |
| Transcript: Sentencing Hearing | 69 | 06/23/2023 | 595–645 |
| Transcript: Change of Plea | 70 | 06/26/2023 | 646–685 |